IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EILEEN SHEIL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| REGAL ENTERTAINMENT GROUP | : | NO. 12-CV-1390 |

**MEMORANDUM**

DITTER, J.                                                                                                                                  May 20, 2013

Plaintiff, Eileen Sheil, filed this lawsuit seeking damages for injuries she sustained after falling in a restroom at the Regal Movie Theater in Newtown, Pennsylvania. The defendant, Regal Entertainment Group, has filed a motion for summary judgment. For the reasons that follow, the motion is granted.

1. Factual background

On August 21, 2011, Ms. Sheil and her sister, Brigid Smyth, entered the ladies' bathroom at the Regal after watching a movie. They had been to this movie theater many times. According to Ms. Sheil, Ms. Smyth entered the bathroom first. As Ms. Sheil approached the sink area, she felt her shoe and cane slip out from under her and she fell to the floor. Ms. Sheil did not see what caused her to slip and fall, but she believes it was water because there was an area about the size of her hand on the buttocks area of her pants that was wet. At the time of the incident, Ms. Sheil told Ms. Smyth that her pants were wet. On prior visits to this movie theater, both sisters had used the theater's bathrooms and had observed drips of water on the floor. Neither reported ever falling because of the water on the floor.

Ms. Sheil describes the bathroom as having a tiled floor with sinks on the left side of the room and three bathroom stalls on the left. Hand dryers are located on the right wall approximately six feet past the sinks. There is a mat on the floor below the dryers but no mat in front of the sinks. There was no wet floor sign in the bathroom.

Regal's associate manager, Henri Scott, responded to the accident and prepared an incident report. *See Plt.'s Resp.*, Exh. D. The report indicates that Ms. Sheil stated she fell when her cane hit a spot of water. Witnesses reported hearing a disposal box fall and then seeing Ms. Sheil fall. The report also indicates that there was no water on the floor when Scott inspected the bathroom. Ms. Sheil was taken to the hospital by ambulance.

Scott also testified that the bathrooms were busiest when movies were letting in and out. He was aware that water would splash on the floor from the sink from time to time. Regal's inspection policy requires that each bathroom be inspected every half hour. It is not known when this particular bathroom had last been inspected prior to this incident. The testimony of another associate manager, Robert Mayberry, was consistent with Scott's testimony concerning Regal's policies and his experience with water on the bathroom floors.

2. Summary Judgment

The standard for summary judgment is well established. I must consider the evidence in a light most favorable to the non-moving party. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion. Here, Ms. Sheil must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). She "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992). She cannot "merely rely upon conclusory allegations in her pleadings or in memoranda and briefs." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

3. <u>Discussion</u>[1]

It is uncontested that Sheil was a business invitee, and thus, Regal owed a duty to protect her from foreseeable harm. Under Pennsylvania law, to succeed on her claim of negligence against a business owner, Ms. Sheil must show that Regal: 1) knew or by reasonable care should have known of an unreasonable risk of harm to business invitees; 2) should not expect invitees to discover or protect themselves from the danger; and 3) failed to exercise reasonable care to protect the invitees from the danger. *See Carrender v. Fitterer,* 469 A.2d 120, 123 (Pa. 1983); *see also* Restatement (Second) of Torts § 343.[2]

Regal contends that Ms. Sheil has failed to produce any "direct evidence" that there was water on the bathroom floor, and more importantly, that Regal knew or had reason to know that there was water on the floor. *Def.'s Mot*., ¶¶ 25, 26. Ms. Sheil contends that the "frequency of

---

[1] In this diversity action, it is uncontested that I must apply Pennsylvania law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 80 (1938).

[2] Sheil also cites the Restatement (Second) of Torts § 344, and cases that interpret this section's applicability under Pennsylvania law, to argue that notice should be inferred in this case. However, § 344 is inapplicable because without evidence as to the origin of the spill, Ms. Sheil cannot establish that it was caused by the tortious conduct of a third party. *See Read v. Sam's Club,* No. 05-0170, 2005 U.S. Dist. LEXIS 37579 (E.D. Pa. Sept. 23, 2005).

the occurrence of water being on the bathroom floor each time the bathroom was inspected gave defendant actual notice of the dangerous condition." *Plt.'s Mem.* 4. She further asserts that Regal's "violation of its own bathroom maintenance policy established a factual issue as to [its] compliance with its duty to exercise reasonable care for the safety of its business invitees." *Id.*

First, I find that there is sufficient evidence offered by Ms. Sheil to raise an issue of material fact as to whether there was water on the floor and whether it was enough to present an unreasonable risk of harm to someone using the bathroom. Ms. Sheil testified that although she didn't see water on the floor prior to slipping, she believes there was water on the floor because her pants were wet after her fall. She also testified that she had observed drips on the bathroom floors in the sink area on prior visits to the theater. Although Regal employees testified at deposition that they did not observe any water on the bathroom floor, the incident report indicates Ms. Sheil told employees that she fell because of water on the floor. This testimony is sufficient to raise an issue of fact for the jury to decide after weighing the testimony of the various witnesses.

Next, I consider whether Regal knew or should have known that there was water on the bathroom floor. There is no allegation that Regal caused the water to be on the bathroom floor or that it had actual notice that there was water on the floor prior to this incident.[3] Rather, Ms. Sheil contends that the jury could find Regal liable under a theory of constructive notice – that is, Regal would have known of the alleged condition if it had exercised reasonable care. Ms. Sheil contends the evidence shows that the injury-causing condition occurred frequently, thus notice to Regal of the danger can be inferred.

---

[3] There is also no assertion that Sheil should not have been expected to discover and protect herself from this potential danger.

To establish constructive notice in a premises liability case, there must be proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant would have known of its presence, because the defendant "cannot be charged with notice of transitory dangers that can materialize in a split second." *Neve v. Insalaco*, 771 A.2d 786, 789 (Pa. Super. 2001); *see also Hower v. Wal-Mart*, No., 08-1736, 2009 U.S. Dist. LEXIS 51557, *10-11 (E.D. Pa. 2009). It is normally within the province of the jury to evaluate factors relating to constructive notice, however, if the evidence "requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the court." *Craig v. Franklin Mills Assocs.*, 555 F. Supp. 2d 547, 549-60 (E.D. Pa. 2008) (quoting *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)).

There are a variety of factors to evaluate when determining constructive notice. For example, courts have considered "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Id.* (internal quotations omitted). One of the most important factors in this determination is the length of time that elapsed "between the origin of the defect or hazardous condition and the accident." *Neve*, 771 A.2d at 791. Without evidence that the spill had been on the floor for a "significant duration of time, a jury may not reasonably infer that [Regal] had constructive notice." *Cox v. Wal-mart Stores*, 350 F. App'x 741, 743 (3d Cir. 2009). "[W]here a plaintiff points to such evidence, it is a question of fact for the jury whether, under all the circumstances, the defective condition of the floor existed long enough so that it would have been discovered with the exercise of reasonable care." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). In the absence of evidence of the duration of time a spill remained on the floor prior to an accident, courts have granted

summary judgment and made clear that constructive notice cannot be inferred. *See Hower*, 2009 U.S. Dist. LEXIS 51557, *12 (citing cases).

Mrs. Sheil points to no evidence that could establish when this spill occurred. This is not a situation where there was a plumbing problem, a flood or an obvious spill. Ms. Sheil speculates that the presence of water on the floor was caused by patrons' hands that may have dripped when going from the sink to the dryers. Moreover, this scenario would only establish how the water got on the floor, not when such dripping occurred and if sufficient time had passed that Regal employees should have known water was on the floor. "The mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way." *Saldana*, 260 F.3d at 234. Unfortunately for Ms. Sheil, this type of evidence is insufficient to establish the duration of the spill without "resort to 'conjecture, guess or suspicion.'" *Craig*, 555 F. Supp. 2d at 549-60; *Saldana*, 260 F.3d at 234 (dust on a pool of wax was insufficient to indicate how long wax was on the floor absent evidence of "how much dust was found, how long it would have taken for dust to accumulate, or whether the dust was picked up off the floor by the spreading wax or the force of [plaintiff's] fall"). *Compare, Kania v. Sbarro, Inc.*, No. 97-6863, 1998 U.S. Dist. LEXIS 18531, *5-6 (jury could infer from testimony that plaintiff saw no one inspect the area of salad bar for five to ten minutes before the accident and that lettuce was on floor long enough to turn brown).

Ms. Sheil argues further that constructive notice should be found based on Regal's maintenance policies. Regal's general policy is that bathrooms be inspected every half-hour and the inspection is usually done by an usher. The usher carries paper towels with him and is responsible for cleaning up any spills. Regal employees working on the night of this incident testified that they did not know when the bathroom had last been inspected prior to Ms. Sheil's

6

fall. These same employees testified that they were aware that water got on the floor in front of the sinks and under the hand dryers from time to time. There was a mat under the hair dryers but not by the sinks. If there was any evidence as to when the water got on the floor, this evidence should be used by a jury to determine whether Regal, using reasonable care, should have known about it and I would deny summary judgment. However, this evidence does not establish when the floor got wet, the trigger which is necessary to start Regal's duty, and therefore, summary judgment must be granted. *See Lal v. Target Corp.*, No. 12-5007, 2013 U.S. Dist. LEXIS 47380, *10 (E.D. Pa. Apr. 2, 2013) (maintenance procedures go to whether possessor acted reasonably, not to establish that it knew or should have known about the spill in question).

4. Conclusion

In the absence of any evidence that Regal had actual or constructive notice of water on the bathroom floor, I must conclude as a matter of law that Regal was not negligent and I must enter judgment in its favor. An appropriate order follows.